

**SO ORDERED.**

**SIGNED this 23 day of October, 2009.**

_____/s/ Dale L. Somers_____
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Opinion designated for print publication and on-line use.
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| IVAN M. HERRMAN and<br>ELNORA S. HERRMAN, | CASE NO. 8-11781<br>CHAPTER 7 |
| DEBTORS. | |
| LINDA S. PARKS, Trustee, | |
| PLAINTIFF, | |
| v. | ADV. NO. 08-5284 |
| CATHOLIC FAMILY FEDERAL<br>CREDIT UNION,<br>IVAN M. HERRMAN, and<br>ELNORA S. HERRMAN, | |
| DEFENDANTS. | |

**MEMORANDUM OPINION AND ORDER
DENYING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT CATHOLIC FEDERAL CREDIT UNION'S
MOTION FOR SUMMARY JUDGMENT**

This is an adversary proceeding brought by the Chapter 7 Trustee to avoid the lien of defendant Catholic Family Federal Credit Union ("Credit Union") in Debtor's 1999 GMC Suburban pursuant to 11 U.S.C. § 544 and to preserve the lien for the benefit of the estate pursuant to 11 U.S.C. § 550. Under advisement are the cross motions for summary judgment filed by the plaintiff Trustee, who appears by Scott M. Hill and Rachel E. Avey of Hite, Fanning & Honeyman L.L.P., and by defendant Credit Union, represented by Eric D. Bruce, Bruce, Bruce & Lehman, L.L.C. There are no other appearances. The Court has jurisdiction.[1]

**UNCONTROVERTED FACTS**.

On December 30, 1988, Debtors entered into a credit agreement and truth-in-lending disclosure, called a Loanliner Agreement, with Credit Union. On February 9, 1999, Debtors requested an advance under the 1988 Loanliner Agreement by signing an Advance Request Voucher and Security Agreement for a loan of $36,522.90 for the purchase of a 1999 GMC Suburban, which was offered as security for the loan. The loan, which provides for monthly payments of $738.00,[2] was approved, and the vehicle was purchased. The original certificate of title issued on March 17, 1999 shows the lien of the Credit Union. The 1988 Loanliner Agreement provides: "Property given as security under this Plan or for any other loan may secure all amounts you owe the credit union now and in the future," and the 1999 Advance

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). There is no objection to venue or jurisdiction over the parties.

[2] There is no evidence as to when this loan would be fully amortized and no evidence of when it was paid in full.

Request Voucher and Security Agreement provides that the security interest granted in the 1999 GMC "also secures any other advances you have now or receive in the future under the LOANLINER Credit Agreement and any other amounts you owe the credit union for any reason now or in the future." There is no evidence of the loan balance or payment history of this loan.

On August 6, 2003, Debtors entered into a new Loanliner credit agreement, called a Loanliner Open-End Agreement, with Credit Union. They also executed an Open-End Voucher for a loan of $19,659.50 and signed a security agreement pledging the GMC Suburban as collateral.[3] No actions were taken in 2003 to perfect the lien in the Suburban. The payment terms provided for monthly payments of $338, with the due date of September 6, 2003. There is no evidence as to the loan balance or payment history on this loan.

Debtors filed for relief under Chapter 7 on July 22, 2008. On Schedule D they listed the Credit Union as having a claim of $4,296.25, secured by the GMC Suburban. The records of the Department of Revenue reflect that as of July 22, 2008, the Credit Union had a perfected lien in the GMC Suburban.

On November 14, 2008, the Trustee filed her complaint alleging that the Credit Union's lien in the GMC Suburban may be avoided because it was not perfected on the date of filing. The basis for her contention is the uncontroverted fact that at sometime after being perfected in March 1999, the Credit Union executed the lien release on the front of the certificate of title for the Suburban. The certificate of title was retained in the Credit Union's files and was never delivered to the Debtors or submitted to the Department of Revenue.

---

[3] There is no evidence as to the purpose of this loan or how, if at all, it relates to the 1999 loan for purchase of the Suburban.

3

The Trustee submits that the release was executed on September 8, 2000. This position is based upon the Credit Union's admission on April 8, 2009 of the following statement in requests for admissions submitted to it by the Trustee: "REQUEST NO. 4: Admit that on September 8, 2000, Credit Union executed a lien release in the space provided on the certificate of title." However, on June 18, 2009, the Credit Union served on the Trustee a supplemental answer to the Trustee's requests for admissions in which it admitted as follows: "REQUEST NO. 4: Admit that on September 8, **2004**, Credit Union executed a lien release in the space provided on the certificate of title." The Court has examined a copy of the certificate of title and has concluded that date of the release is very difficult to read.[4] As the Trustee notes, the Credit Union's supplement to its response to the request for admission was not submitted in accord with the procedure provided by Fed. Rule of Bankr. P. 7036(b), since leave of court was not requested. Nevertheless, the Court finds that Credit Union should not be bound by its original admission.[5] Rule 36(b) authorizes the withdrawal or amendment of an admission when it would promote the presentation of the merits of the action and the court is not persuaded that it would prejudice the opposing party in maintaining the action on the merits. This Court finds those conditions satisfied and the failure to seek Court approval not a sufficient basis to deny amendment. When a supplemental response to admissions has been served, discovery rules should not be applied to require the Court to treat as uncontroverted a date which is demonstrably difficult to determine. The Court therefore finds that date the lien release on the front of the certificate of title was executed is controverted.

---

[4] The certificate of title is notarized. It states that the commission expires in 2004, on a day which is difficult to read, but could be after the date which the Trustee contends the lien release was executed.

[5] *See Reyes v. Vantage S.S. Co., Inc.*, 672 F.2d 556, 557-58 (5th Cir.1982).

4

**ANALYSIS.**

The determinative question in this case is whether a secured creditor's execution of the release of lien form on a paper certificate of title terminates perfection when, after the execution of the release, the certificate of title is maintained by the creditor and not delivered to the debtor or sent to the division of motor vehicles. The date the lien release was executed is not material to this issue.

In Kansas, a lien on a motor vehicle may be perfected only through compliance with the motor vehicle certificate of title statutes.[6] Generally, the perfection, duration, and renewal of a security interest in such property is determined by compliance with such statutes, but in other respects that security interest is subject to article nine of the Uniform Commercial Code.[7] When the Credit Union was granted a security interest in the GMC Suburban in 1999, certificates of title were paper documents and liens were perfected by the Department of Revenue through the Division of Motor Vehicles issuing a paper certificate of title showing the name of the secured party on the face of the certificate.[8] The certificate of title included a space for the release of lien.[9] The parties agree that the Credit Union properly perfected its security interest in 1999, as evidenced by the certificate of title in its possession and the records of the Division.

Termination of a motor vehicle lien and release of perfection of a lien in a vehicle are

---

[6] *In re Hicks*, 491 F.3d 1136 (10th Cir. 2007); see K.S.A. 2008 Supp. 84-9-303; K.S.A. 2008 Supp. 84-9-311; K.S.A. 2008 Supp. 8-135.

[7] K.S.A. 84-9-302 (Furse 1996); K.S.A. 2003 Supp. 84-9-311.

[8] K.S.A. 1999 Supp. 8-135.

[9] *Id.*

5

also governed by the certificate of title statutes.[10] Effective January 1, 2003, Kansas shifted from paper certificates of title to electronic certificates of title for the purpose of lien notation.[11] However as to vehicles, such as the GMC Suburban in this case, for which certificates of title were issued prior to such date that indicated a lien or encumbrance was on such vehicle, the paper certificate of title continued to be effective.[12] There is therefore no need to consider the procedures for release of liens under the electronic title system.

The Kansas motor vehicle title statute provides little detail concerning the procedure for releasing liens. It is primarily concerned with when a lien release must be provided, a matter which is not at issue in this case. In both 2000 and 2003 it provided as follows:

> . . . When a prior lienholder's name is removed from the title, there must be satisfactory evidence presented to the division that the lien or encumbrance has been paid. When the indebtedness to a lienholder, whose name is on the title, is paid in full, such lienholder within 10 days after written demand by restricted mail, shall furnish to the holder of the title a release of lien or execute such a release in the space provided on the title. For failure to comply with such a demand the lienholder shall be liable to the holder of the title for $100 and also shall be liable for any loss caused to the holder by such failure. When the indebtedness to a lienholder, whose name is shown on the title, is collected in full, such lienholder, within 30 days, shall furnish notice to the holder of title that such indebtedness has been paid in full and such title may be presented to the lienholder at any time for release of lien.[13]

---

[10] *See* K.S.A. 84-9-302 (Furse 1996); K.S.A. 2003 Supp. 84-9-311.

[11] K.S.A. 2003 Supp. 8-135d.

[12] K.S.A. 2003 Supp. 8-135(c)(1) - (14).

[13] K.S.A. 2000 Supp. 8-135; K.S.A. 2003 Supp. 8-135.

6

Case 08-05284    Doc# 52    Filed 10/23/09    Page 6 of 10

As to the procedure for releasing a lien, the foregoing establishes that first a release of lien document or the title with the release space executed is to be furnished to the holder of the title. Second, the holder of the title may then submit the title and the release to the Division, which upon proof of satisfactory evidence that the lien has been paid in full, will remove the lienholder's name from the title. In this case, although the lien release on the title was executed, the title was not delivered to either the Debtors or the Division, and the Credit Union's lien remained of record in the Division of Motor Vehicles.

The Trustee's position is that the lien was terminated not withstanding the fact that the Credit Union retained the title after executing the release. An unpublished decision of this Court, *In re Haberman*,[14] is cited for support. In *Haberman,* a bank's lien had been noted on the certificate of title of a 1980 Pontiac. In 1996, a bank officer signed the lien release notation on the title and delivered it to the debtors, who did not submit it to the Department of Revenue. In 2001 debtors gave the bank a new security interest in the Pontiac to secure a new debt and gave the title to the bank, which put it in a collateral box. In a lien avoidance action brought by the trustee, the Court held that the lien was unperfected, even though the records of the Department of Revenue for the Pontiac showed the bank as the secured party. The Court stated:

> At first glance, it might seem incongruous to hold that the Bank's lien is unperfected in this case. The records of the Division show that the Bank has a lien, and the Bank has the certificate of title that shows its lien release in a box under its control. However, in Kansas, taking possession of a title does not perfect a lien on a vehicle. The Court is not required to answer the question whether the Bank would have a perfected lien if it had never executed the lien release on the title before it made the new loan

---

[14] *Morris v. St. John Nat'l Bank (In re Haberman)*, 2004 WL 2035341 (Bankr. D. Kan., Somers, J., April 14, 2004), aff'd 347 B.R. 411 (10th Cir. BAP 2006), aff'd 516 F.3d 1207 (10th Cir. 2008).

7

and the Debtors gave it a new security interest in the car. In this case, the Bank did execute the lien release. By doing that, the Bank left open a way for the Debtors to obtain a lien-free title. The Title Statute includes a provision indicating that a lienholder's name will be removed from a title when the owner presents "satisfactory evidence . . . to the division that the lien or encumbrance has been paid." Although they gave the original to the Bank, the Debtors might have kept a copy of the certificate showing the lien release. If they did, they could have taken it to the Division (maybe along with other evidence showing they had paid off the old lien), and have convinced the Division they were entitled to a certificate of title with no lien notation simply by failing to mention the new lien they had given the Bank. On the other hand, if the Bank had followed the requirements of the Title Statute for its new lien, the Debtors would not have had the chance to get a lien-free title because the Division's records would have shown that the new lien was created after the lien release was added to the old certificate of title, and that any other poof of payment the Debtors had was for the old lien.[15]

This case is clearly distinguishable from *Haberman*, since in this case the title was not delivered to the Debtors after the lien release was executed. The return of the title in *Haberman* was a clear indication that both the creditor and the debtor intended to terminate the perfected security interest and that a new security agreement and perfection would be obtained if the vehicle in question was to secure a new advancement or loan. In this case no such indication arises since the title was retained by the Credit Union. The rationale of *Haberman*, that the bank's actions would have made it possible for the debtors to obtain a clean title after they executed a second security agreement,[16] does not apply here. Since the Credit Union retained the title certificate and never delivered it to the Debtors after the lien release was executed, the Debtors could not have obtained a clean title while indebtedness was outstanding.

---

[15] *Id.*, 2004 WL 2035341 at *4.

[16] The Court notes that Kansas has shifted from paper to electronic certificate of titles. The issues presented by this case and by *Haberman* are not likely to arise in the future.

8

The ruling that a lien release is not effective when the secured party retains the certificate of title on which the release is executed is consistent with the provisions of Article 9 concerning the termination of security interests perfected through filing. Article 9 defines a termination statement as "an amendment to a financing statement" which identifies the financing statement to which it refers and "indicates either that it is a termination statement or that the identified financing statement is no longer effective."[17] It further provides that upon "filing of a termination statement with the filing office, the financing statement to which the termination statement relates ceases to be effective."[18] Filing of the termination statement is required; the execution of a release which is held by the secured party is not effective to terminate perfection.

The Court therefore holds that the Credit Union's lien in the GMC Suburban was perfected on the date of filing. The lien was perfected in 1999 through compliance with the procedures established by Kansas law for perfection of liens in property subject to the Kansas certificate of title statute. The lien was reflected in the records of the Division. The release executed by the Credit Union was not effective to terminate perfection because it was held by the Credit Union and not delivered to the Debtors or submitted to the Division. Perfection therefore continued from 1999 through the date of filing. When executing a new loan in 2005 and taking a new security agreement, the Credit Union was not required to comply with the certificate of title statute procedures for perfection through delivering the certificate of title, an application, and a fee to the Division. The Credit Union already had a perfected security interest in the GMC Suburban.

---

[17] K.S.A. 2008 Supp. 84-9-102(79).

[18] K.S.A. 2008 Supp. 84-9-513(d).

For the foregoing reasons, the Court grants the Credit Union's motion for summary judgment finding that the Trustee may not avoid the Credit Union's lien in the 1999 GMC Suburban on the grounds that it was unperfected on the date of filing.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###

10

Case 08-05284    Doc# 52    Filed 10/23/09    Page 10 of 10